UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding   No. 4:20-mj-82

20-104-04                              **APPLICATION FOR SEARCH WARRANT** "REDACTED"

I, David Sundet, being duly sworn depose and say:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), the U.S. Justice Department in Sioux Falls, South Dakota, and make this application for information about the location of the cellular telephones fully described in Attachment A, attached hereto and incorporated herein by reference (the "Target Cell Phone"), whose service provider is Verizon Wireless, a wireless telephone service provider headquartered at P.O. Box 46698, Baltimore, MD, 21264 (the "Service Provider"). The location information to be seized is described in Attachment B, attached hereto and incorporated herein by reference.

2. I have reason to believe that said information will aid law enforcement in the location and apprehension of persons suspected of committing criminal offenses, concerning violations of 21 U.S.C. §§ 841(a)(1) and 846 and others.

3. The facts to support a finding of probable cause are contained in my Affidavit filed herewith.

_____
David Sundet, Special Agent
Drug Enforcement Administration

Sworn to and subscribed telephonically, on the 9th day of October, 2020.

_____
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**  "REDACTED"
**Property to Be Searched**

1. The cellular telephone assigned call number ███████ ("**Target Cell Phone**") that is stored at premises controlled by Verizon Wireless, a wireless telephone service provider headquartered at P.O Box 46698, Baltimore, MD, 21264.

2. Records and information about the location of the Target Telephone that are within the possession, custody, or control of Verizon Wireless, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B   "REDACTED"
### Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

All information about the location of the cellular telephone assigned call number ▮▮▮▮▮▮▮▮ (the "Target Telephone") for the time period starting the date of issuance of the search warrant, until 30 days from the date of issuance of the search warrant, during all times of day and night. "Information about the location of the Target Telephone" includes all available E-911 Phase II data, PLU/GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., 120-degree face of the towers) received a radio signal from the Target Telephone, including utilization of the periodic location update.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Telephone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).

**II.  Information to be Seized by the Government**

All information described above in Section I that discloses the location of the Target Telephone and/or constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Oscar MADRIGAL or other unidentified subject(s).

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding   No. 4:20-mj-82

20-104-04                                **SEARCH WARRANT** "REDACTED"

TO:   ANY AUTHORIZED LAW ENFORCEMENT OFFICER

An application by a federal law enforcement officer or an attorney for the government requests the search for information about the location of the cellular telephone fully described in Attachment A, attached hereto and incorporated herein by reference (the "Target Cell Phone"), whose service provider is Verizon Wireless, a wireless telephone service provider headquartered at P.O. Box 46698, Baltimore, MD, 21264 (the "Service Provider"), regarding violations of 21 U.S.C. §§ 841(a)(1) and 846 and others. The location information to be provided is described in Attachment B, attached hereto and incorporated herein by reference,

To the extent that the information described in Attachment B (hereinafter, "Location Information") is within the possession, custody, or control of Service Provider, Service Provider is required to disclose the Location Information to the government beginning the date of issuance of the search warrant, until 30 days from the date of issuance of the search warrant.

In addition, Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with its services, including by initiating a signal to determine the location of the Target Cell Phone on its network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

The government shall compensate Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

I find that the affidavit, or any recorded testimony, establish probable cause to permit the location search.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**YOU ARE COMMANDED** to execute this warrant on or before 10-23-2020 _____ (not to exceed 14 days)

☒ in the daytime – 6:00 a.m. to 10:00 p.m.

☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the undersigned Judge.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized, for 30 days.

☐ for _____ days *(not to exceed 30).*

☐ until, the facts justifying, the later specific date of _____.

10-9-2020 at 3:17 pm CDT at Sioux Falls, South Dakota
Date and Time Issued Telephonically

_____
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

cc: AUSA Hodges

[2]

## ATTACHMENT A  "REDACTED"
### Property to Be Searched

1. The cellular telephone assigned call number ███████ ("**Target Cell Phone**") that is stored at premises controlled by Verizon Wireless, a wireless telephone service provider headquartered at P.O Box 46698, Baltimore, MD, 21264.

2. Records and information about the location of the Target Telephone that are within the possession, custody, or control of Verizon Wireless, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B  "REDACTED"
### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

All information about the location of the cellular telephone assigned call number ▓▓▓▓▓▓ (the "Target Telephone") for the time period starting the date of issuance of the search warrant, until 30 days from the date of issuance of the search warrant, during all times of day and night. "Information about the location of the Target Telephone" includes all available E-911 Phase II data, PLU/GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., 120-degree face of the towers) received a radio signal from the Target Telephone, including utilization of the periodic location update.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Telephone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).

### II. Information to be Seized by the Government

All information described above in Section I that discloses the location of the Target Telephone and/or constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Oscar MADRIGAL or other unidentified subject(s).

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding   No. 4:20-mj-82

20-104-04

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** "REDACTED"

I, Special Agent David Sundet, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number ▮▮▮▮▮▮▮▮▮▮ **(Target Cell Phone)** that is stored at premises controlled by Verizon Wireless, P.O Box 46698, Baltimore, MD, 21264. The information to be searched is described in the following paragraphs and in Attachment A, attached hereto and incorporated herein by reference. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon Wireless to disclose to the government copies of the information further described in Section I of Attachment B, attached hereto and incorporated herein by reference. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), the U.S. Department of Justice, and have been so employed since August 2019. I am currently assigned to the DEA Sioux Falls Resident Office (SFRO) in Sioux Falls, SD, and charged with investigating drug trafficking and money laundering violations under Title 18 and Title 21 of the United States Code. I have received 16 weeks of specialized training in Quantico, Virginia, pertaining to drug identification and drug trafficking, undercover operations, and electronic and physical surveillance procedures. Before becoming a Special Agent with the DEA, your Affiant was a Texas Peace Officer with the Killeen Police Department of Killeen, Texas, and prior to that, a Federal Maritime Law Enforcement Officer with the U.S. Coast Guard, Department of Homeland Security.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.  I know from my training and experience that persons involved in the possession and distribution of controlled substances will often utilize vehicles not registered in their name and/or utilize rental vehicles to transport illegal substances, firearms and monies in efforts to conceal their identity from law enforcement.  They will also travel outside the State of South Dakota in furtherance of their illegal enterprise to obtain controlled substances, to pay for controlled substances or to transport or spend the proceeds of the sale of controlled substances.

5.  I know from my training and experience that individuals involved in the possession and distribution of controlled substances will often utilize electronic devices, such as mobile telephones, electronic address books, computers, etc., to facilitate communications with and/or store names, addresses and/or telephone numbers of associates, customers and sources of supply.

6.  Through training and experience, I know that many modern mobile telephones have the ability to create, send, receive, and store digital media files in the form of digital photographs, audio and video recordings, and written messages such as text messages or email.  Through training and experience, I know that individuals involved in the possession and distribution of controlled substances will carry their cellular telephones on their person. Having the ability to have precise GPS location of that telephone will enable law enforcement to safely and surreptitiously conduct surveillance of their illegal narcotic activities. Through training and experience, I know that individuals involved in the possession and distribution of controlled substances will often change their cellular telephone numbers if they suspect it has been compromised and/or detected by law enforcement.

7.  Based on the facts set forth in this affidavit, I believe there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed, are being committed, and will be committed by Oscar MADRIGAL.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

**PROBABLE CAUSE**

8.  On May 10, 2020, Sioux Falls Police Department (SFPD) Detectives received information from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that Robin Jo GRAFF was distributing methamphetamine in Sioux Falls. Detectives conducted a South Dakota Driver's License record check of GRAFF and discovered that GRAFF had changed her name to Robin Jo VENSAND, with a listed address of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Sioux Falls, SD.

[2]

9. Between June 4, 2020, and August 24, 2020, SFPD detectives conducted numerous surveillance operations of ▮▮▮▮▮▮▮▮▮▮, in Sioux Falls. Detectives verified that VENSAND lived at this address and further observed a large amount of foot and vehicle traffic in and out of this residence that is conducive to drug trafficking activity. Continued surveillance operations by detectives led to traffic stops of various suspects coming and going from ▮▮▮▮▮▮▮▮▮▮, and several of these traffic stops led to vehicle pursuits and arrests for the possession of methamphetamine, possession of marijuana, and possession of various other items of drug paraphernalia.

10. On August 24, 2020, SFPD detectives applied for and received a search warrant for ▮▮▮▮▮▮▮▮▮▮, Sioux Falls, SD, from South Dakota Magistrate Judge Eric Johnson. Included in this search warrant was the ability to search any portable electronic communication devices and cell phones found on the ▮▮▮▮▮▮▮▮▮▮ property, to include their contents. SFPD executed the search warrant with the assistance of Special Agents (SA) and Task Force Officers (TFO) from the US Drug Enforcement Administration's (DEA) Sioux Falls Resident Office (SFRO). During the search warrant operation, DEA Special Agents, TFO's, and SFPD detectives located approximately 844 grams of methamphetamine, approximately 4,361 grams of marijuana, approximately 30 hydrocodone pills, various other items of drug paraphernalia, approximately $26,967 in US Currency (USC), and several cell phones to include an Alcatel cell phone (▮▮▮▮▮▮▮▮▮▮). During the execution of the search warrant, detectives arrested Robin Jo VENSAND and Lanny Leif VENSAND at the residence. Both Robin VENSAND and Lanny VENSAND asked for their attorneys and refused to cooperate with investigators.

11. In an attempt to identify drug sources of supply for the VENSAND's, investigators began to look into the frequent calls and texts made by the seized Alcatel cell phone (▮▮▮▮▮▮▮▮▮▮). Agents presented a DOJ Administrative Subpoena to Verizon Wireless for ▮▮▮▮▮▮▮▮▮▮, and received results showing this phone was only active since July 29, 2020, and had predominantly communicated with ▮▮▮ phone number ▮▮▮▮▮▮▮▮▮▮ VERIZON WIRELESS phone ▮▮▮▮▮▮▮▮▮▮, and Verizon phone number ▮▮▮▮▮▮▮▮▮▮ **(Target Cell Phone).**

12. Agents discovered evidence of drug dealing text messages between the Alcatel cell phone and a ▮▮▮▮▮▮▮▮▮▮ phone number, leading agents to believe this phone was a "burner phone" the VENSANDs used to conduct drug distribution phone calls. DEA SFRO presented an Administrative Subpoena to VERIZON WIRELESS in order to identify the subscriber, but the results obtained showed the phone belonged to an unknown prepaid cell phone customer with the address of ▮▮▮▮▮▮▮▮▮▮ in Dallas, TX, and had been deactivated two days after the VENSAND search warrant operation.

13. DEA agents then began investigating **Target Cell Phone**. Agents received DOJ Administrative subpoena results from Verizon showing that the **Target Cell Phone** subscriber was Oscar MADRIGAL of ▇▇▇▇▇▇▇ in Sioux Falls, SD. Agents discovered Oscar MADRIGAL was currently on parole for manslaughter. Between July 27, 2020, and September 23, 2020, **Target Cell Phone** had toll communication with ▇▇▇▇▇▇▇ and another 887 tolls with three other phone numbers (▇▇▇▇▇▇▇) that were all subscribed to Salvador Magana MADRIGAL, who has a 2017 conviction in Riverside, CA, for conspiracy to distribute 11.5 kilograms of cocaine. Agents were able to obtain California birth certificates for Oscar Magana MADRIGAL and Salvador Magana MADRIGAL, and observed the two men to have the same parents. Additionally, agents discovered a 2019 Minnehaha County Sheriff's Office arrest interview report where Salvador MADRIGAL's ▇▇▇▇▇▇▇ phone number was identified by a defendant as a source of supply contact for cocaine and marijuana.

14. Agents observed through South Dakota driver's license records and law enforcement database checks that Oscar and Salvador MADRIGAL had addresses listed at ▇▇▇▇▇▇▇, Sioux Falls, SD. On October 7, 2020, DEA agents and Sioux Falls Police Detectives conducted surveillance at ▇▇▇▇▇▇▇ and observed Salvador MADRIGAL's white GMC Sierra pick-up truck (▇▇▇▇▇▇▇; Registered to Salvador MADRIGAL) parked at ▇▇▇▇▇▇▇, and subsequently drove away from ▇▇▇▇▇▇▇. Agents conducted a trash pull at ▇▇▇▇▇▇▇, Sioux Falls, SD, and located an Amazon prime package mailed from Nevada and addressed to Oscar MADRIGAL at ▇▇▇▇▇▇▇, Sioux Falls, SD. Inside and along with this Amazon prime package was a one gallon sized vacuum sealed baggie with marijuana residue inside the packaging.

15. It is imperative for agents to know the location of **Target Cell Phone** in order to intercept illicit drug loads and establish where the Oscar MADRIGAL source of supply is based in order to identify and dismantle the entire DTO.

16. Based on the foregoing, I believe that **Target Cell Phone** was a drug trafficking contact for the VENSAND's and involved as a source of supply. I believe **Target Cell Phone** is in furtherance of trafficking, possessing, and the sale of controlled substances, specifically methamphetamine, in the Sioux Falls, SD, region. I further believe additional evidence of **Target Cell Phone**'s drug trafficking routes and location data will be discovered through the use of cellular location data. I believe that being able to track the movements of **Target Cell Phone** will assist law enforcement in identifying methods used by Oscar MADRIGAL to distribute controlled substances, identify any potential stash houses used by Oscar MADRIGAL, and identify any additional co-conspirators involved with the Oscar and Salvador MADRIGAL DTO. Additionally, your affiant

believes that being able to observe the phone numbers **Target Cell Phone** is contacting will assist agents in identifying other co-conspirators of the DTO.

## CELLULAR TELEPHONE PROVIDER RECORDS

17. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18. Based on my training and experience, I know that VERIZON WIRELESS can collect cell-site data about the **Target Cell Phone**. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19. Based on my training and experience, I know that Verizon Wireless can collect cell-site data on a prospective and historic basis about the **Target Cellular Telephone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

20. Based on my training and experience, I know that some service providers can also collect per-call measurement data, which some refer to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which the signals travel between the device and the tower. This information can be used to

estimate an approximate location range that is more precise than typical cell-site data.

21. Based on my training and experience, I know that Verizon Wireless can provide periodic location updates (PLU) via email at intervals of no less than 15 minutes. This tool will provide more precise radius in an urban area where there are a lot of towers. In more rural areas with less towers you will see a larger radius. The latitude and longitude measurements are based on the Verizon Wireless 3G/4G cell site and sector data obtained from a Verizon Wireless Mobile Switching Center/Mobility Management Entity. The measurements are best estimates and are not related to any GPS measurement. The accuracy of the estimated distance depends on many factors such as power, beam width and orientation of the antenna. Note that any radius reading over 1000m should not be considered an accurate calculation of the distance from the estimated latitude/longitude. Additionally provided is a link to Google Maps, which indicates where Google Maps plots the latitude and longitude measurements. Verizon Wireless makes no representation as to the accuracy of Google Maps.

22. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antennae or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

23. Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone**'s user or users and may assist in the identification of co-conspirators and/or victims.

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within its possession, custody, or control. I also request that the Court direct Verizon Wireless, to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the **Target Cell Phone** on Verizon Wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

26. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

_____
David Sundet, Special Agent
US Drug Enforcement Administration

Sworn to telephonically on the ___9th___ day of October, 2020.

_____
VERONICA L. DUFFY
United States Magistrate Judge

[7]

**ATTACHMENT A** "REDACTED"
**Property to Be Searched**

1. The cellular telephone assigned call number ▮▮▮▮▮▮▮▮ ("**Target Cell Phone**") that is stored at premises controlled by Verizon Wireless, a wireless telephone service provider headquartered at P.O Box 46698, Baltimore, MD, 21264.

2. Records and information about the location of the Target Telephone that are within the possession, custody, or control of Verizon Wireless, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B   "REDACTED"**
**Particular Things to be Seized**

## I. Information to be Disclosed by the Provider

All information about the location of the cellular telephone assigned call number ▮▮▮▮▮▮▮▮ (the "Target Telephone") for the time period starting the date of issuance of the search warrant, until 30 days from the date of issuance of the search warrant, during all times of day and night. "Information about the location of the Target Telephone" includes all available E-911 Phase II data, PLU/GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., 120-degree face of the towers) received a radio signal from the Target Telephone, including utilization of the periodic location update.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Telephone on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. See 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that discloses the location of the Target Telephone and/or constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Oscar MADRIGAL or other unidentified subject(s).